

FILED

2015 Nov-16  AM 11:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| ANGELIA MAXINE HARRIS, )<br>)<br>Plaintiff )<br>)<br>vs. )<br>)<br>COMMISSIONER, SOCIAL SECURITY )<br>ADMINISTRATION, )<br>)<br>Defendant ) | Case No.  2:14-cv-01000-HGD |

## <u>MEMORANDUM OPINION</u>

This matter is before the undersigned United States Magistrate Judge based upon the consent of the parties pursuant to 28 U.S.C. § 636(c) and LR 73.2.  Plaintiff, Angelia Maxine Harris, protectively filed applications for Social Security disability and Supplemental Security Income benefits on July 1, 2010.  (Tr. 27, 149, 150).  She alleged that she suffers from bipolar disorder, anger problems, multiple personality, manic depression, back and neck pain, and severe headaches.  (Tr. 182).  On September 18, 2012, a hearing was held before an Administrative Law Judge (ALJ) wherein plaintiff was represented by counsel.  (Tr. 53).  The onset date was amended at that time to reflect a date of January 1, 2012.  (Tr. 60).

On November 13, 2012, the ALJ issued an opinion finding that the medical evidence established severe impairments of neck and back pain, headaches, chronic Bell's palsy, history of alcohol abuse, bipolar disorder and borderline personality disorder. (Tr. 29). The ALJ further found that these impairments still allowed plaintiff to perform unskilled light work with additional postural and mental restrictions. (Tr. 32). He also found that these restrictions do not preclude plaintiff from performing her past work as an escort vehicle driver. (Tr. 38-39). In the alternative, the ALJ found plaintiff could perform other work in the national economy, including work as a bakery worker, assembler II, sorter or polisher. (Tr. 38-39). Consequently, the ALJ found that plaintiff was not disabled. (Tr. 40).

This decision was appealed on December 11, 2012. Argument was presented on May 31, 2014. (Tr. 250). On March 28, 2014, the Appeals Council denied plaintiff's appeal. Plaintiff has exhausted her administrative remedies and this action is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## I.    ALJ Decision

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or

profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments.  20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work,  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled.  *Id.*  If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience.  20 C.F.R.

§ 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience.   20 C.F.R. §§ 404.1520(g) and 404.1560(c).

Following this protocol, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through June 16, 2016.  She has not engaged in any substantial gainful employment since January 12, 2012.  He further found that plaintiff has the severe impairments of chronic neck and back pain, headaches, chronic Bell's palsy, history of alcohol abuse, bipolar disorder, and borderline personality disorder.  (Tr. 29).  The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 30).

After analyzing plaintiff's medical history, the ALJ determined that she has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can occasionally perform postural movements of stooping, kneeling, crouching, crawling, and climbing ramps and stairs, but she should never climb ladders, ropes or scaffolds; and she cannot work around unprotected heights or dangerous or moving equipment.  Furthermore, she can understand and remember simple, but not complex, instructions and she can do them for two hours at a time to complete an eight-hour day, provided all customary breaks are given.  She would

function best in her own work area without close proximity to others.  Her contact with the public, co-workers and supervisors should be casual and informal, and not intense or prolonged.  Feedback should be supportive and non-threatening.  She can respond to at least simple and infrequent changes in the work setting, but she would need help with planning and goal setting.  (Tr. 32).

Based on this RFC and the testimony of a vocational expert (VE), the ALJ determined that plaintiff is capable of performing past relevant work as an escort vehicle driver, a sedentary and unskilled position.  The VE testified that a person with plaintiff's limitations would be able to perform the requirements of such occupations as bakery worker, assembler II, sorter and polisher, all of which are jobs that are available in significant numbers in Alabama and nationally.  (Tr. 38-40).

With regard to her mental impairments, the ALJ noted that the medical records reflect that plaintiff was seen at Oneonta Family Healthcare in January 2007 and diagnosed with stress and situational depression.  In March 2007, she returned to this location and was diagnosed with depression.  In July 2007, she was evaluated at the Eastside Mental Health Center.  She reported that she had a "short fuse" an d a history of violence towards others.  She also reported a history of crystal methamphetamine and alcohol abuse.  However, she also reported that she had been clean for a year. Plaintiff was diagnosed with bipolar disorder and borderline personality disorder. She was prescribed Trazadone and lithium carbonate.  The lithium carbonate was

later changed to Depakote.  She remained in treatment at the center until August 2007.  (Tr. 35)

Plaintiff next was treated at St. Vincent's Family Care between October 2008 and September 2009.  During that time, she was diagnosed with stress and anxiety from being out of work.  She was prescribed Lexapro and Cymbalta after she reported the Trazadone was not working.  (Tr. 35-36).

Plaintiff returned to Eastside Mental Health Center in November 2009, the first time she had been there since November 2007.  A treatment plan was in place, but plaintiff did not have any further contact until March 2010 when she called to say that she had court that day due to a domestic violence charge.  (Tr. 36).

On March 23, 2011, Dr. David Wilson, Ph.D., performed a consultative psychological examination at the request of the state agency.  Plaintiff told Dr. Wilson that she applied for disability because she had trouble with her back, did not get along well with others, and had mood swings and angry outbursts.  (Tr. 36).  The only medication she reported taking was for migraines.  Dr. Wilson estimated that plaintiff's level of intelligence fell within the borderline range.  His diagnoses were bipolar disorder, most recent episode depressed, a history of alcohol abuse but not recent, borderline personality disorder, and estimated borderline intelligence.  He assigned her a Global Assessment of Functioning (GAF) score of 50, stating that she would have difficulty working in any job where she has to interact with others.  He

also stated that her mood disorder was a serious problem for her and that she likely needed to be on medication, which was a problem given her financial situation and her history of not following through with treatment. (*Id.*).

Plaintiff underwent a psychiatric evaluation at Quality of Life on June 1, 2011. Despite her prior admission to the contrary, plaintiff denied any history of drug or alcohol use. She was diagnosed with bipolar disorder and assigned a GAF of 59. Plaintiff advised that she would schedule an appointment with Eastside Mental Health. However, she did not return to that facility until a year later on June 25, 2012.

In the intake process at Eastside, plaintiff reported that she last used crack cocaine in 2003, methamphetamine in 2004, and alcohol in 2011. She was diagnosed with mood disorder, post-traumatic stress disorder, a history of methamphetamine dependence and a personality disorder. She was assigned a GAF of 45 and started individual therapy. In August 2012, plaintiff's diagnosis was changed to bipolar disorder, most recent episode unspecified, amphetamine dependence, and personality disorder. From June to August 2012, her GAF improved to 55. (*Id.*).

In reaching his conclusions with regard to plaintiff, the ALJ stated that he gave some weight to the findings and opinion of Dr. Wilson. He noted, however, that according to the work history in Dr. Wilson's report, plaintiff did not tell him about her work as an escort driver or about the custody situation regarding her

grandchildren.  The ALJ concluded that these omissions did not provide a complete picture of her work history and her daily activities.  He further found that the GAF of 50 was inconsistent with the GAF of 59 assigned to the claimant when she was psychiatrically evaluated at Quality of Life just three months later.  (Tr. 38).

The ALJ gave significant weight to the opinions of the state agency psychological consultant, Arnold Mindinghall, Ph.D.  Although Dr. Mindinghall did not examine plaintiff, he provided specific reasons for his opinions indicating that they were based on the evidence of record, including careful consideration of the objective medical evidence and plaintiff's allegations regarding symptoms and limitations.  The ALJ further noted that Dr. Mindinghall's opinions are internally consistent and are consistent with the evidence as a whole, which shows that plaintiff was able to work as an escort driver, which required little to no contact with others, that she is capable of caring for herself and her young grandchildren, and that she is currently in counseling and taking medications for her mental health impairments. (Tr. 38).

The ALJ gave little weight to the opinion of plaintiff's daughter, Rebecca Harraza, regarding the severity of her mother's physical limitations because they are inconsistent with the activities reported by plaintiff and based only on personal observations rather than objective medical testing, and subject to motivations based upon loyalties to family rather than disinterested evaluation.  (Tr. 39).

The ALJ concluded that the above RFC assessment was supported by the record, when considered as a whole, especially in light of the course of treatment prescribed for plaintiff for her impairments, the opinion evidence discussed above, plaintiff's own report and testimony of her daily activities of daily living, and her medical treatment records, all of which suggest a greater sustained capacity than that described by plaintiff.  (Tr. 38).

## II.    Plaintiff's Argument for Reversal

Plaintiff objects to what she describes as the rejection of the opinion of the consultative psychologist, Dr. David Wilson, Ph.D.  According to plaintiff, the consultative psychologist found, on March 23, 2011, that plaintiff had a GAF of 50, which was consistent with a GAF of 45 assessed in a mental health intake evaluation in June 2012, but which was in conflict with a GAF of 59 assessed a few months after her assessment by Dr. Wilson.  (Doc. 12, Plaintiff's Brief, at 5-6).  Plaintiff notes that the ALJ gave significant weight to the opinion of State Agency reviewing medical consultant Dr. Mindinghall, who provided a Psychiatric Review Technique and RFC assessment in April 2011.  Plaintiff alleges that these conflicting opinions should have been handled by further developing the record with another consultative examination.  (*Id.* at 6).

### III.    Standard of Review

Judicial review is limited to whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Brown*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, re-evaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.

## IV.   Discussion

While a treating doctor's opinion is generally entitled to more weight, and an ALJ must give good reasons for discounting a treating doctor's opinion, *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011), the same is not true with regard to the opinions of non-treating doctors.  The opinions of one-time examiners are not entitled to any special deference or consideration.   *See* 20 C.F.R. §§ 404.1502, 404.1527(c)(2), 416.902 and 427.927(c)(2); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (stating that a doctor who examines a claimant on only one occasion is not considered a "treating physician").  In addition, opinions such as whether a claimant is "disabled" or "unable to work" are not medical opinions; they are administrative findings that are dispositive of the case.  *See* 20 C.F.R. §404.1527(d).[1]

Contrary to plaintiff's assertion, the ALJ properly considered the evidence of record, including Dr. Wilson's opinion, in determining plaintiff's RFC.  Dr. Wilson performed a consultative physical examination of plaintiff and is, therefore, a one-time examiner.  The opinion of a one-time examiner is not entitled to controlling or

---

[1]  This regulation states, in pertinent part:

 We are responsible for making the determination or decision about whether you meet the statutory definition of disability.  In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled.  A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

substantial deference by the ALJ.  The ALJ did not defer to Dr. Wilson's opinion and explained the reasons why he did not do so.

In the case of the opinions of Dr. Mindinghall, the ALJ assigned significant weight, noting that Dr. Mindinghall provided specific reasons for his opinions, indicating that they were based on the evidence of record, including consideration of the objective medical evidence and plaintiff's claims regarding her symptoms and limitations.  (Tr. 38).

State agency experts, such as Dr. Mindinghall, are considered experts in the Social Security disability programs and their opinions must be considered as evidence, except for the ultimate determination about whether a claimant is disabled. *See* 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p, 1996 WL 374180.  As required by Social Security regulations, the ALJ explained the reasons he gave the weight he assigned to Dr. Mindinghall's opinions.  Therefore, the ALJ properly considered the opinions of Dr. Wilson and Dr. Mindinghall.

Plaintiff asserts that the ALJ was required to further develop the record by obtaining the opinion of another medical expert.   A case will be remanded for failure to develop the record only if the plaintiff shows prejudice.  *See Robinson v. Astrue*, 365 Fed.Appx. 993, 995-96 (11th Cir. 2010) (citing *Brown v. Halala*, 44 F.3d 931, 935 (11th Cir. 1995)).  Prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not

consider all of the evidence in the record." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985). While an ALJ has a duty to develop the record fully and fairly, *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997), a consultative examination or other medical expert testimony is not required when the record contains sufficient evidence for the ALJ to make an informed decision. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Plaintiff's main complaint stems from the fact that she had GAF scores ranging from 45 to 59 during various evaluations. The Commissioner has noted that the GAF scale "does not have a direct correlation to the severity requirements in [SSA's] mental disorder listings." 65 Fed. Reg. 50746 at 50764-65; *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (GAF score may assist ALJ in formulating a claimant's RFC, but is not essential). Similarly, the Ninth Circuit has found that a claimant with a GAF score of 40 was not disabled. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant with GAF scores ranging from 45 to 61 was not disabled). Consequently, plaintiff has not demonstrated that she was prejudiced by the ALJ's failure to obtain further medical testimony based on these variations. The ALJ's explanation for his decision was more than adequate. Further medical evidence was not necessary for him to make an informed decision, and substantial evidence supports his decision.

Accordingly, upon review of the administrative record, and considering all of plaintiff's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Therefore, that decision is due to be affirmed.  A separate order will be entered.

DONE this 16th day of November, 2015.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE